**BEGAM MARKS & TRAULSEN, P.A.**
11201 North Tatum Blvd., Suite 110
Phoenix, Arizona 85028-6037
(602) 254-6071

Richard P. Traulsen – State Bar #016050
rtraulsen@BMT-law.com
*Local Counsel for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nickeisha Rainford, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>Freedom Financial Network, LLC,<br><br>Defendant. | Case No.: CV-22-2014-PHX-DWL<br><br><br>**JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT** |

## INTRODUCTION

Named Plaintiff Nickeisha Rainford, the other 45 remaining employees who opted-in to this Fair Labor Standards Act ("FLSA") collective action, (collectively "Plaintiffs") and Defendant Freedom Financial Network, LLC ("Freedom Financial" or "Defendant") file this Joint Motion to Approve Settlement Agreement. The Parties' settlement is set forth in the attached Settlement Agreement. *See* Ex. 1. The Parties request that the Court approve the settlement payments to the FLSA Collective, the proposed attorneys' fees and costs, the service award to Named Plaintiff, and to dismiss this matter with prejudice.

## BACKGROUND

**I.    PROCEDURAL HISTORY.**

Named Plaintiff Rainford started this action by initially filing her Complaint in the Northern District of California on September 15, 2022. Named Plaintiff Rainford brought her Complaint on behalf of herself and a putative collective and class of call center

employees to recover for Defendant's allegedly willful violation of the FLSA, the Arizona Wage Act, and common law. (ECF 1). On November 16, 2022, the Parties reached an agreement to transfer the action to the District of Arizona. (ECF 15). Defendant filed an Answer to the Complaint on December 5, 2022, denying liability for the claims asserted in the Complaint and asserting affirmative defenses to the action. (ECF 24).

The Parties met-and-conferred regarding notice pursuant to 29 U.S.C. § 216(b) and reached a Stipulation where Defendant reserved its right to seek decertification of the FLSA Collective. (ECF 33). The parties agreed to send notice to:

Physical Call Center Collective:

> *All current and former Customer Service Representative employees, and/or other job titles performing the same or similar job duties, who worked in a physical call center in Arizona for Freedom Financial Network, LLC, at any time in the last three years.*

Remote Call Center Collective:

> *All current and former Customer Service Representative employees, and/or other job titles performing the same or similar job duties, who worked remotely in Arizona for Freedom Financial Network, LLC, at any time in the last three years.*

The Court approved the Parties' Stipulation and a 60-day notice period commenced. (ECF 34). At the end of the 60-day notice period, 60 individuals joined the action, not including Named Plaintiff. (ECF 37–61). The Parties entered settlement discussions and engaged in discovery. (ECF 62, 65, 67, 69, 72–74, 77). During discovery, Defendant provided data for Plaintiffs, including pay rates and start and end dates at the company. This discovery informed Plaintiffs that the claims of 15 Opt-in Plaintiffs were time-barred under the FLSA's extended 3-year statute of limitations. (ECF 78). Therefore, 46 individuals, including Plaintiff, maintain live claims. The Parties used this information to form damages calculations and engaged in settlement discussions whereby they considered the merits of their respective positions and considered monetary and non-monetary terms. The parties ultimately reached the resolution presented to the Court in their Settlement Agreement.

## II. PLAINTIFFS' CLAIMS AND DEFENDANT'S DEFENSES.

Plaintiffs worked as CSRs for Defendant in Arizona. The Complaint alleges that Defendant failed to compensate Plaintiffs for all time worked, in violation of the overtime provisions of the FLSA and Arizona state law. Specifically, Plaintiffs allege that they were required to work off-the-clock by booting up and logging into their computers and programs in order to take their first call at their scheduled shift start time. Plaintiffs claim that this boot-up and call ready process could take up to 10 minutes per day. Plaintiffs allege that such work is compensable time under the FLSA, and that Defendant knew such work was being performed without compensation. Plaintiffs further allege that they are entitled to liquidated damages and a three-year statute of limitations because Defendant's violations were willful.

Defendant asserts that it complied with the FLSA and denies that CSRs were not compensated for all time worked. Defendant further asserts that it required CSRs to accurately report all time worked, including time spent logging on and off their computers. Defendant further alleges that any log-in time was *de minimis*. Defendant also maintains that it provided robust timekeeping policies and procedures, including the CSRs ability to request that their time clocks be adjusted to account for issues both in and out of their control.

## III. THE SETTLEMENT.

The Parties agreed to resolve Plaintiffs' unpaid overtime claims for $24,955.53. Defendant has agreed to pay Plaintiffs the equivalent of 4 minutes of overtime pay per workday of that individual's tenure (with a 40% reduction to account for workweeks where a Plaintiff was not eligible for overtime pay) within the extended 3-year statute of limitations from the filing of the each Collective Member's Consent to Sue. Half of each Plaintiff's settlement payment represents compensation for alleged unpaid overtime, while the remaining half represents alleged liquidated damages. For each settlement payment of unpaid time, 50% of the payment will be considered back wages and subject to all appropriate withholdings and 50% of the payment will be considered liquidated damages

not subject to withholdings.

The parties view this as a compromise between Plaintiffs' position that they are owed up to 10 minutes of unpaid overtime per workday for unpaid boot-up and call ready work and Defendant's position that Plaintiffs are owed nothing. Thus, the Parties have fairly allocated these funds according to a compromise on the hours allegedly worked and amounts allegedly earned during the relevant statute of limitations period.

The amount allegedly owed to each of the Plaintiffs will be calculated based on each Plaintiff's overtime pay rate and the number of weeks they worked during the statutory period (3 years back from the filing of each individual's Consent to Sue) according to the records produced by Defendant. The average settlement payment for the FLSA Collective is $542.51. Each Collective Member will receive at least $50.00. The average Plaintiff has 11 months of work covered by the lawsuit. The settlement further provides for a $1,000.00 service award to Named Plaintiff Rainford. Lastly, the settlement provides for Plaintiffs' reasonable attorneys' fees and costs in the amount of $24,044.47.

## **ARGUMENT**

**I.      THE COURT SHOULD APPROVE THE SETTLEMENT.**

Employees cannot waive claims for unpaid wages under the FLSA without court approval. As the Eleventh Circuit Court of Appeals explained in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982), in the "context of suits brought directly against their employer under Section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." The Ninth Circuit has implicitly indicated that it would follow the Eleventh Circuit's decision. *See Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007). Arizona courts have also relied on *Lynn's Food Stores*. *See Hand v. Dionex Corp.*, No. CV 06-1318-PHX-JAT, 2007 WL 3383601, at *1 (D. Ariz. Nov. 9, 2007). Accordingly, the parties jointly ask for the Court's approval of the proposed settlement in this case.

If a settlement reflects a "reasonable compromise over issues, such as ...

computation of back wages, that are actually in dispute," the district court may approve the settlement "in order to promote the policy of encouraging settlement of the litigation." *Rape v. Shrader & Martinez Construction USA LLC*, No. CV-21-08158-PCT-DJH, 2022 WL 4182351, at *1 (D. Ariz. Sept. 12, 2022) (citing *Lynn's Food Stores, Inc.* at 1354). The settlements must be fair and reasonable. *Id.* A court should "approve a fair and reasonable settlement if it was reached as an arm's length resolution of contested litigation to resolve a bona fide dispute under the FLSA." *Lockwood v. R&M Towing LLC*, No. CV-19-4812, 2020 WL 5724383, at *2 (D. Ariz. Sept. 24, 2020) (citing *Lynn's Food Stores, Inc.* at 1352–54).

### A. A Bona Fide Dispute Exists.

A bona fide dispute exists when there are legitimate questions about the existence and extent of defendant's FLSA liability. *Panico v. Turnbull Law Group, LLC*, No. CV-21-02060-PHX-MTM, 2022 WL 220485, at *1 (D. Ariz. Jan. 25, 2022) (internal quotations omitted); *see also Dahl v. Bay Power Inc.*, No. 20-CV-07062-HSG, 2021 WL 2313388, at *2 (N.D. Cal. May 28, 2021) (finding a bona fide dispute where the defendants disputed allegations of failure to pay overtime and asserted several affirmative defenses). Here, as discussed above, Defendant disputes the merits of Plaintiffs' allegations, that a collective action should remain conditionally certified, that liquidated damages should be available, and disputes whether Defendant's conduct was willful, permitting a three-year statute of limitations. Plaintiffs further dispute Defendant's defenses that the work at issue is not compensable under the FLSA and is *de minimis*. Thus, there is a bona fide dispute in this case.

### B. The Settlement is Fair and Reasonable.

There are no universally used factors to consider in evaluating a proposed FLSA settlement for whether it is fair and reasonable, but some factors courts have looked at are: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views

of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *Panico*, 2022 WL 220485, at *2 (citing *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016)). Ultimately, courts evaluate whether a settlement agreement of FLSA claims is fair and reasonable under the totality of the circumstances. *Id.* (citing *Selk* at 1173).

For the first factor, as discussed above, Plaintiffs are receiving the equivalent of 4 minutes per workday of alleged overtime, plus liquidated damages, where Defendant asserts that Plaintiffs performed at most a couple minutes of unpaid work, if any, each workday. Plaintiffs' recovery of approximately 40% of their alleged damages is significant and commonly approved by courts. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (finding settlement fair where the settlement represented between 9% and 27% of the total potential recovery); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 57–58 (E.D.N.Y. 2010) (settlement within range of reasonableness when it represented approximately 13% to 17% of the maximum possible recovery). This is especially true where Plaintiffs' recovery is potentially zero if Defendant prevails on a future motion for decertification or summary judgment; or if it prevails at trial.

As to the second factor, the stage of proceedings, this litigation has been pending for a year-and-a-half where the Parties have continuously weighed their claims and defenses. The Parties touched on the facts and merits of the case while negotiating the Stipulation for Conditional Certification and throughout their settlement discussions. The Parties have also engaged in written discovery and document production, which influenced their settlement discussions. The Parties are well-apprised of the information necessary to resolve Plaintiffs' claims, which included production by Defendant of relevant employment records for Plaintiffs to calculate damages.

For the third factor, both Parties face significant litigation risks. There is no doubt that if the settlement is not approved, the Parties will need to undergo protracted litigation. Although the Parties have litigated this dispute for over a year-and-a-half, additional litigation is necessary to take the claims through summary judgment and trial. The Parties

1  would need to continue discovery through additional interrogatories, document requests
2  and requests for admission. The Parties would also need to conduct several depositions.
3  Plaintiffs and Defendant intend to brief motions for summary judgment. Continuing
4  litigation would likely delay, by years, a resolution of Plaintiffs' claims.

5         For the fourth factor, the Settlement Agreement only includes a general release of
6  claims for Named Plaintiff Rainford, in part, for the exchange of a service award. The Opt-
7  in Plaintiffs will only provide a release for wage and hour claims that could have been
8  asserted in the Complaint by accepting their settlement payment. This factor weighs in
9  favor of approval.

10        The fifth factor is met as well. The Ninth Circuit favors settlements and believes
11 that, in the absence of clear bias, "parties represented by competent counsel are better
12 positioned than courts to produce a settlement that fairly reflects each party's expected
13 outcome in litigation." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995);
14 *see also Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, No. 19-CV-06088-LB, 2020 WL
15 5074392, at *5 (N.D. Cal. Aug. 27, 2020) ("[s]ettlement is a strongly favored method for
16 resolving disputes"). Plaintiffs' Counsel views this settlement as substantial. A 40%
17 recovery of alleged damages is a successful resolution, especially where Opt-in Plaintiffs
18 have not needed to respond to written discovery requests or sit for depositions. Defendant
19 has agreed to pay each Plaintiff at their overtime rate for 4 minutes per workweek for each
20 week they worked for Defendant during the relevant time period. The assumptions made
21 for this settlement weigh heavily in Plaintiffs' favor because the settlement assumes that
22 every Plaintiff can prove 4 minutes of unpaid work per workday and that they were eligible
23 for overtime pay for 60% of their employment. This settlement is therefore a significant
24 concession by Defendant to resolve this matter and a significant result for Plaintiffs.

25        Lastly, there is no evidence of fraud or collusion. Named Plaintiff Rainford was
26 active and involved throughout the settlement negotiations and approved the final amount
27 of the settlement. The Settlement Agreement is therefore fair and reasonable and the Court
28 should approve the Parties' request.

### C. The Parties' Request that the Court Approve the Settlement Notice.

The Notice, attached as Exhibit B to the Parties' Settlement Agreement, informs members of the FLSA Collective about the terms of the settlement and the limited wage and hour release they agree to in exchange for Defendant's settlement payment. It also provides information on how the settlement is reported for tax purposes and provides contact information for Plaintiffs' Counsel. Unlike Fed. R. Civ. P. 23, the FLSA does not require that a formal notice be sent to collective members when an action is settled. Nonetheless, the Parties request approval of their Notice so that the FLSA Collective be adequately informed of the settlement.

## II. THE ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED.

### A. An Award of Attorneys' Fees is Mandatory in FLSA Cases.

The FLSA's fee-shifting provision requires employers, including those that settle cases, to pay the employee's reasonable attorneys' fees and costs in having to bring a lawsuit to recover her unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action.") (emphasis added); *Newhouse v. Robert's Ilima Tours, Inc.*, 708 F.2d 436, 441 (9th Cir. 1983) ("The FLSA grants prevailing plaintiffs a reasonable attorneys' fee."). The reason for requiring the employer to pay the employee's legal fees is simple: "[u]nder the FLSA, 'Congress intended that the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs.'" *Sinyard v. C.I.R.*, 268 F.3d 756, 761 (9th Cir. 2001) (quoting *Maddrix v. Dize*, 153 F.2d 274 (4th Cir. 1946)).

Additionally, fees negotiated by the parties at arm's length carry a presumption of reasonableness:

> The fee was negotiated at arm's length with sophisticated defendants by the attorneys who were intimately familiar with the case, the risks, the amount and value of their time, and the nature of the result obtained for the class. Where there is such arm's length negotiation and there is no evidence of self-dealing or disabling conflict of interest, the Court is reluctant to interpose its

judgment as to the amount of attorneys' fees in the place of the amount negotiated by the adversarial parties in the litigation.

*In re First Capital Holdings Corp. Fin. Prods. Secs. Litig.*, MDL No. 901, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992), appeal dismissed, 33 F.3d 29 (9th Cir. 1994); *see also* Manual for Complex Litigation § 30.42, at 240 (3d ed. 1997) (a "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery").

Moreover, attorney fee awards in FLSA and other socially beneficial cases are not measured in relation to the underlying monetary relief obtained for the plaintiffs. *See Quesada v. Thomason*, 850 F.2d 537, 540 (9th Cir. 1988); *see, e.g., Int'l Bhd. of Carpenters & Joiners of Am., AFL-CIO, Local Union No. 217 v. G.E. Chen Constr., Inc.*, Nos. 03-17379, 04-16013, 136 Fed. Appx. 36, at *2 (9th Cir. May 11, 2005) (upholding attorneys' fee award of more than $200,000 in action where the plaintiff's individual recovery was less than $50,000); *Morales v. City of San Rafael*, 96 F.3d 359, 362–64 (9th Cir. 1996) (reversing $20,000 attorneys' fee award where counsel had requested nearly $140,000 in fees, because it appeared to the Ninth Circuit that the district court was improperly trying to limit the fee award based on the size of the plaintiff's award); *Heikkia v. Avnet Inc.*, No. CV-21-01531-PHX-DJH, 2022 WL 2967702, at *2 (D. Ariz. July 26, 2022) (granting request to award 2/3 of total settlement amount as attorneys' fees and costs); *see also Fisher v. SD Protection, Inc.*, 948 F.3d 593, 604 (2d Cir. 2020) (reasoning that limiting attorneys' fees to a proportion of the recovery would result in "no rational attorney" taking on FLSA cases unless they were doing so pro bono).

Thus, in FLSA cases, an award of "reasonable" attorneys' fees and costs is mandatory and is not measured against the size of Plaintiffs' recovery.

**B.**     **Plaintiffs' Counsel's Lodestar Supports the Requested Fee.**

The reasonableness of the agreed upon amount for attorneys' fees is supported by looking at the lodestar. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (discussing lodestar method's application to attorneys' fees awarded from a fee-shifting statute). The

lodestar presumptively reflects reasonable attorneys' fees. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (stating that the lodestar figure has become the "guiding light" of fee-shifting jurisprudence). The lodestar is calculated by multiplying the reasonable number of hours expended in the litigation by a reasonable hourly rate. *Morales*, 96 F.3d at 363.

In determining the reasonableness of hours expended for lodestar purposes, courts consider, inter alia, the novelty and difficulty of the issues and the level of opposition during the litigation. *See Shipes v. Trinity Indus.*, 987 F.2d 311, 321 (5th Cir. 1993). Here, Plaintiffs' Counsel was opposed by Ogletree, Deakins, Nash, Smoak & Stewart, P.C.—a law firm with a reputation for exceptional work in defending employment actions and complex litigation. Plaintiffs' Counsel showed demonstrable skill and quality by engaging in a concerted effort to obtain Plaintiffs' maximum recovery. Plaintiffs' Counsel expended numerous hours, *inter alia*, developing Plaintiffs' case, preparing the complaint, negotiating conditional certification of the FLSA Collective, conducting discovery, and negotiating this settlement. Over more than a year-and-a-half, Plaintiffs' Counsel have reasonably spent about 176.3 hours working on this lawsuit. *See Rusch Decl.* at ¶ 16. The total amount of hours expended in successfully and diligently prosecuting this action therefore is fair and reasonable for the services provided.

In determining the reasonableness of hourly rates, "[a]ffidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). However, counsel's rates are prima facie reasonable when (i) agreed to by the parties, (ii) computed at no more than the attorneys' customary billing rate, or (iii) within range of the prevailing market rate. *See Camp v. Progressive Corp.*, No. Civ.A. 01-2680, 2004 WL 2149079, at *20 (E.D. La. Sept. 23, 2004). For example, in *Su*, although the district court believed that $640 an hour was a

high rate, it nevertheless approved the attorneys' fees requested because the defendant had agreed to pay them:

> Defendant does not contest the number of hours, the billing rate, or amount of attorney's fees and costs. In fact, Defendant joins in moving for entry of judgment, and stated that it believes that the attorney's fees are reasonable. The Court, therefore, accepts the parties' stipulation, and finds that an award of $120,000 in attorneys' fees and costs is reasonable.

*Su*, 2006 WL 4792780, at *5; *see Joh v. American Income Life Ins. Co.*, No. 18-cv-06364-TSH, 2021 WL 66305, at *8 (N.D. Cal. Jan. 7, 2021) (approving partner rates up to $800 per hour and associate rates up to $465 per hour); *see also Mondrian v. Trius Trucking, Inc.*, 2022 WL 6226843, at *13 (E.D. Cal. Oct. 7, 2022) (finding partner rates of $695-$795, associate rates of $475-$550, and paralegal rates of $175-$275 reasonable).

Here, Plaintiffs' Counsel's customary billing rates ranged from $125.00 to $850.00 an hour. *See Rusch Decl.* at ¶¶ 9–12. At their standard billing rates, Plaintiffs' Counsel's lodestar is approximately $65,845.00—not including ongoing and future attorneys' fee and costs required to finalize, execute, and administer the settlement—including distributing the settlement payments to all FLSA Collective members. *Id.* Plaintiffs estimate that another 20 hours of work will be required to fully administer the settlement. Thus, their fees are reasonable for this type of case and the amount of work performed.

Other courts have recently found Mr. Rusch's and Mr. Kaylor's hourly rates reasonable for FLSA work. *See Haegg v. Magellan Health Inc.*, Case No. 2:22-cv-00061-SPL (D. Ariz.) (ECF 68) (approving $650 and $700 rates for Mr. Rusch and $325 and $350 rates for Mr. Kaylor); *Roberts et al. v. AAY Security, LLC*, Case No. 2:19-cv-00366 (S.D. Tex.) (ECF 57–58) (approving rates between $525-$700 for Mr. Rusch and rates of $325 and $350 for Mr. Kaylor); *see also In re: Lowe's Companies, Inc. Fair Labor Standards Act (FLSA) and Wage and Hour Litig.*, MDL No. 2947 (W.D.N.C.) (approving $325 rate for Mr. Kaylor) (ECF 90-6, 94). Plaintiffs' Counsel's hourly rates are therefore reasonable for FLSA work in the District of Arizona.

Plaintiffs' Counsel's lodestar is $65,845.00. This is a fair and reasonable amount expended in light of the work required. The settlement of $24,044.47 for attorneys' fees and costs is therefore reasonable compared to Plaintiffs' Counsel's lodestar. Thus, the Court should approve the requested attorneys' fees and costs.

### III.  THE SERVICE AWARD SHOULD BE APPROVED.

The parties propose a service award of $1,000.00 to Named Plaintiff Nickeisha Rainford. Service awards "are fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). The Ninth Circuit has recognized that incentive, or service, awards serve an important function as they "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958–59. Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, inter alia, the amount of time and effort spent on the litigation, the duration of the litigation, and the degree of personal gain obtained as a result of the litigation. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

The role of Ms. Rainford as the Named Plaintiff in this litigation was crucial as she initiated the lawsuit, reviewed and approved the original complaint, conferred with Plaintiffs' Counsel regarding conditional certification, participated in discovery, and continuously communicated with Plaintiffs' Counsel throughout the tenure of this litigation, including settlement discussions. Accordingly, this Court should approve the proposed service award to Named Plaintiff Rainford.

### CONCLUSION

For the foregoing reasons, the Parties request that the Court issue an Order approving the Settlement Agreement and dismissing this case with prejudice.

| | |
|---|---|
| Dated: June 6, 2024 | Respectfully Submitted, |
| By: s/ *Zackary S. Kaylor* | By: s/ *Douglas Lynn* (with permission) |
| Jacob R. Rusch (MN Bar No. 0391892) | Douglas (Trey) Lynn (SBN #028054) |
| Zackary S. Kaylor (MN Bar No. 0400854) | Andrew B. Levin (SBN #035762) |
| **JOHNSON BECKER, PLLC** | **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.** |
| 444 Cedar Street, Suite 1800 | Esplanade Center III, Suite 800 |
| Saint Paul, MN 55101 | 2415 East Camelback Road |
| T: 612-436-1800 | Phoenix, Arizona 85016 |
| F: 612-436-1801 | T: 602-778-3700 |
| E: jrusch@johnsonbecker.com | F: 602-778-3750 |
| E: zkaylor@johnsonbecker.com | E: trey.lynn@ogletree.com |
| | E: andy.levin@ogletree.com |
| *Lead Attorneys for Plaintiff* | *Attorneys for Defendant* |

Richard P. Traulsen (AZ Bar No. 016050)
**BEGAM MARKS & TRAULSEN, P.A.**
11201 North Tatum Blvd., Suite 110
Phoenix, Arizona 85028-6037
T: 602-254-6071
E: rtraulsen@BMT-law.com

*Local Counsel for Plaintiff*